# HATHAWAY v. FIELD.

# FIELD v. HATHAWAY.

# HATHAWAY v. COLMAN

---

PATENTS; INTERFERENCE; ABANDONMENT; JOINT INVENTORS; ASSIGNEE.

1. Abandonment of the right to a patent must be affirmatively proved (following *Oliver* v. *Felbel*, 20 App. D. C. 255; *Lederer* v. *Walker*, 39 App. D. C. 122; *Hubbard* v. *Berg*, 40 App. D. C. 577), but long delay, unexplained, may satisfy the rule (Following *Re Mower*, 15 App. D. C. 144.)

2. In an interference involving a warp-tying machine, where the evidence
   showed that the junior party conceived the invention in 1900, and
   reduced it to practice in 1901 by the construction of a machine
   embodying the invention of the issue, which machine he kept in
   the factory with which he was connected, and which he exhibited
   from time to time, but which was not used commercially because
   one of its parts needed development in order that the machine
   might be used for handling fine as well as coarse yarns, it was
   *held* that his delay in filing an application until 1906 did not show
   concealment or abandonment. (Distinguishing *Mason* v. *Hepburn*,
   13 App. D. C. 86, and *Re Mower, supra.*)

3. In an interference involving a warp-uniting machine, where two joint
   inventors conceived the invention of the issue and disclosed it to a
   third inventor, who was working for and in behalf of the same
   common assignee on a warp-tying machine, a related invention, and
   such third inventor built a machine in which he embodied the
   generic ideas of the joint inventors, it was *held* that such work
   inured to the benefit of the joint inventors, and that their inven-
   tion was reduced to practice at the same time that his was.

Nos. 1192, 1193, and 1194. Patent Appeals. Submitted January 15, 1919.
                    Decided February 3, 1919.

HEARING on appeals from decisions of the Commissioner of
Patents in two related interference proceedings.    *Reversed.*

The facts are stated in the opinion.

*Mr. Melville Church, Mr. Wm. G. Johnson, Mr. Frederick
L. Emery,* and *Mr. Thomas B. Booth* for Field, Lanning, &
Hathaway.

*Mr. W. Orison Underwood, Mr. Luther L. Miller,* and *Mr.
Lincoln B. Smith* for Colman.

Mr. Chief Justice SMYTH delivered the opinion of the Court:

We have here two related interferences which were argued
and submitted together. The applications of Edgar F. Hath-

away and of Willard F. Field and Charles D. Lanning are owned by one party,—the American Warp Drawing Machine Company, and the application of Howard D. Colman by another party,—Barber-Colman Company. We shall consider first the interference between Hathaway and Colman, which involves a warp-tying machine.

Hathaway conceived the invention in 1900 and completed a machine embodying it in 1901, but did not file his application for a patent until 1906. Colman conceived his invention in 1903, built a machine in 1904, and filed his application for a patent in the latter part of the same year. He is therefore the senior party. Both inventions are striking productions of inventive genius.

The Board of Examiners and the Commissioner united in holding that Hathaway was the first to conceive and the first to actually reduce to practice, and the correctness of this holding was conceded at the bar by Colman; but he asserted that after the reduction to practice Hathaway and his assignee concealed the machine and treated it as an abandoned invention. His contention was sustained by the Examiner of Interferences, rejected by the Board of Examiners, but upheld by the Commissioner. It presents the only question for our consideration.

In *Re Mower*, 15 App. D. C. 144, 153, this court held as a general proposition that "there can be no abandonment of the right to a patent, unless such abandonment *be affirmatively proved.*" Proof, however, of long delay, unexplained, may satisfy the rule, for "affirmative facts may be proved by negative evidence." (Ibid.)

In *Oliver* v. *Felbel*, 20 App. D. C. 255, 262, we said: "But when reduction to practice has been satisfactorily shown, and there is no unreasonable or unexplained delay, there is no law that would bar the first or original inventor of his right. In order to give to delay the effect of destroying such a right, there must be some circumstance of concealment, suppression, or abandonment of the invention."

It was ruled in *Lederer* v. *Walker*, 39 App. D. C. 122, 126, that "the right of the first inventor who has actually reduced to

practice has always been respected where there is no doubt of actual reduction to practice, and consideration has always been given to the circumstances excusing the delay."

*Hubbard* v. *Berg,* 40 App. D. C. 577, 581, is authority for the proposition that "abandonment must be strictly proved, and will never be presumed." It was also said in the same case that "it is a fundamental principle of patent law that the first to reduce to practice is prima facie the first inventor and entitled to a patent." From this it would seem that the appellee in the case at bar has the burden of strictly proving concealment or abandonment on the part of Hathaway or his assignee.

Mars, superintendent of installation of the Warp Drawing Machine Company, said that between the years 1901 and 1906 he saw the machine so many times that he could not count them; that it was in the factory all the time "where I couldn't help seeing it and I couldn't say how many times;" that during that period all the employees of the establishment saw it, and that "from time to time there would be strangers brought in by Mr. Hathaway, Mr. Lanning, and Mr. Field. On such occasions they would be shown the machine." The machine was cleaned from time to time, was carefully guarded against abuse, and when not being shown "was covered with a cloth to keep out the dirt and prevent the oil dripping upon it."

Sullivan, an attorney at law, who at one time worked for the machine company, but who at the time he testified was not in any way connected with it, said that about 1903 Mr. Hathaway showed him a knotting [tying] machine and told him he must learn to operate it, as they intended to put it out in conjunction with another machine. He further said that after he left the factory in which the machine was located he was accustomed to return four or five times a year, between 1902 and the time he left the employ of the company in 1907; that the machine at these times was always in the factory and looked to him "to be in condition so that it could be run at a moment's notice."

Senay, an overseer in the warp preparation department of the granite mill, an establishment engaged in the manufacture

of cotton yarn and cotton cloth, testified that Mr. Hathaway showed him the knotting machine in the plant of the Warp Drawing Machine Company in 1902; and Coldwell, superintendent of the Booth Manufacturing Company, and Collins, superintendent of the Berkeley Mills, all disinterested witnesses, testified to the same effect.

The warp-tying machine in 1901 was capable of handling only a coarse class of yarn. This was not enough to secure for it a wide commercial field. It was the first machine of its kind that had ever been invented, and those who owned it were puzzled as to just how it could be utilized. They sought advice from experts in the textile mills of New England. In doing this they revealed the machine to many persons. Blanchard, who was superintendent of the machine company up to 1902, but not connected with it after that, testified that he had consulted with a number of men engaged in the mill business in Massachusetts and neighboring territory concerning the machine, and that he learned from them "that the work suitable for tying-in commercially, as opposed to the process of drawing-in, would be found in by far the largest volume in fine yarns and complicated weaves;" that various mill men, "particularly Mr. Hardy of the Manchester Mills, and more especially Mr. Lacey, whose judgment I [he] respected more than the other men, told me [him] that a successful tying machine, that is, a tying machine to be commercially successful, must be able to handle those fine yarns, and further than that they did not have any tying-in work at that time except that was running on fine yarns." In this he is supported by the testimony of the witnesses just named. How to improve the tying machine so as to make it capable of handling the finer yarns was the question which confronted the machine company. It could be done only by a further development of one of its parts known as the warp-separating worm. Until this was accomplished the market for the machine would be very much restricted.

At the time about which we have been speaking the machine company also owned a drawing-in machine. This machine utilized a warp-separating worm the same as the tying-in

machine. Coldwell testified that he advised Mr. Hathaway "to do his experimenting on those worms on the drawing-in machine, as the same mechanism applied to both machines, the tying-in machine and the drawing-in machine," and that if he succeeded in developing the worm on the drawing-in machine to the point desired he "certainly could do it on the tying-in machine." This course was adopted by the machine company.

From that time, about 1901, until 1906, when the difficulty was overcome, the company gave almost constant attention to the problem before it. Hathaway testified: "We were working constantly not only from October 1, 1901, to the beginning of 1903, but clear through and well into the year 1906; and I do not think that there was a working day when we were not engaged in either making a new warp worm embodying some minute, if not great, change in forming or finishing, or were not trying out or having tried out in some of the mills worms for the handling of the finer kinds of yarn."

Collins, who had never been in the employ of the machine company or in any way connected with it, and who from 1899 to 1914 was superintendent of the Berkeley Mills, said that between 1901 and 1906 he kept in touch with all the machine company was doing with respect to "refining the warp worms in order to enable their machines to handle the finer kinds of yarn," and that "they were constantly at work to improve the warp worms so that they could accomplish this very thing for the finer work." Mars, Field, Senay, Lanning, and Sullivan gave testimony to the same effect. These witnesses are not directly contradicted.

The party Colman relies upon many circumstances from which he draws a conclusion favorable to his theory of concealment and abandonment. While we recognize the force of what he shows, we cannot yield to it. In our judgment it falls far short of satisfying the rule which requires strict proof from him. Much reliance is placed by him upon *Mason v. Hepburn,* 13 App. D. C. 86, and *Re Mower,* 15 App. D. C. 144, 151, but we do not think they aid him. It was held in the first case that Mason, against whom abandonment was asserted,

"attached no importance to the invention; for there is [was] not a fact in evidence to account otherwise for his long inaction." The *Mower Case* decided that it was "not pretended [in that case] that the delay occurred by reason of any oversight or inadvertence, or from poverty, or any obstacle that could not easily be overcome." These decisions do not fit the case before us, for there are here abundant facts "in evidence to account" for the machine company's delay. The obstacle which that company had to deal with "could not easily be overcome," as was the fact in the *Mower Case.*

We think it cannot be correctly held that the machine company either concealed or abandoned its invention.

The other interference is between Hathaway, Field, and Lanning and Colman. It involves a warp-uniting machine as distinguished from the warp-tying machine of the first interference. Field and Lanning filed in 1905, while, as we have said at the outset of this opinion, Hathaway filed in 1906 and Colman in 1904. It is clearly established that Field and Lanning were the first to conceive. Colman asserts that they never reduced to practice, but, if they did, that their invention was afterwards concealed or abandoned.

In 1900 they disclosed their invention to Hathaway, and he embodied their generic ideas in his machine. We have heretofore pointed out that both applications are owned by the same assignee. What Hathaway did in reducing his invention to practice was done under Field's and Lanning's instructions and in behalf of the common assignee. We think his work must be treated as inuring to their benefit,—that their invention was reduced to practice the same time that his was.

This leaves for disposition only the question as to whether or not the invention was concealed or suppressed. It was submitted on the same evidence as that upon which we determined a like contention in the first interference; consequently the result must be the same.

The decisions of the Commissioner of Patents are reversed, and priority of invention is awarded to Edgar F. Hathaway in interference 33,920 and to Field and Lanning in interference 33,918.                                           *Reversed.*